Good morning, your honors. May it please the court, my name is Denise Castellan, and I'm here representing the estate of Yanira Serrano, the appellants in this case. May I reserve two minutes for rebuttal? Thank you, your honor. This case comes before this court on appeal from the United States District Court of the Northern District. There, the district court granted defendants a police motion for summary judgment specifically as to the estate's federal claims. More specifically, the excessive force claim brought pursuant to the Fourth Amendment, as well as the substantive due process claim brought pursuant to the Fourteenth Amendment. These claims arose on June 3, 2014, when Deputy Menh Trieu, a deputy sheriff with the San Mateo County Sheriff's Office, fatally shot an 18-year-old girl who suffered from schizophrenia, as well as a physical disability. Her name was Yanira Serrano. On appeal, there's two principal issues that must be decided. The first of which is whether triable issues of fact exist as to the reasonableness of the shooting, such that a jury could reasonably find in favor for the estate of Yanira Serrano. And the second of which is whether Deputy Trieu should be afforded the defense of qualified immunity. Now, this court has held, specifically the Ninth Circuit has held that in the context of excessive force cases, the granting of motions for summary judgment should be done sparingly. And the reason why is because the excessive force inquiry naturally requires a jury to sift through disputed factual contentions and draw upon inferences from those disputes. Now here, specifically as it regards to the Serrano case, there exist triable issues. But more specifically, there exist triable issues as to the heart of the Graham analysis. Counsel, my reading of the district judge's order that she assumed all facts in favor of your client, but there were disputed facts. So this is, for example, between the officer and the victim here. She took the facts most favorable to your client. So to the extent she assumed facts in your favor, what are the remaining issues that you think are dispositive or triable here? Sure, Your Honor. Well, respectfully, I do not believe that she ruled assuming facts favorable to the plaintiff. She said she would. Sure. And if she did, then I would submit, Your Honor, that — Are you saying she didn't say that? Assuming that she did, Your Honor, and I understand that in the order the court provides that the facts were assumed in favor of the nonmoving party, I would argue that a reasonable jury would find that a 15 — shooting an individual who is armed with nothing but a paring knife, who is 15 to 20 feet from the deputy, is unreasonable. I would also argue that a reasonable jury would find that an individual who is hobbling, shuffling, and moving towards the deputy with nothing more than, and I quote, and simply shuffling towards the deputy, a jury would not find that shooting to be reasonable. And if I may, Your Honor. Well, the district court concluded there was no excessive force under the circumstances, but we also have the issue of qualified immunity, and the Supreme Court's been casting a pretty broad net on that in terms of saying that under the circumstances. So, assuming the facts that you've indicated, that she's going to the — facing the officer with a knife, maybe shuffling 20 feet away, you have — what's your best case that says that the officer's not titled qualified immunity? Sure. One of the best cases that is very analogous, if you will, but highly distinguishable, is the Sheehan case. The Sheehan case, the Supreme Court came down in 2016 holding that the officers acted reasonably. But I want to draw the difference between the Sheehan case and the Serrano case. In the Sheehan case, which defendants of police rely upon, it was in an enclosed room, and it's undisputed that the Miss Sheehan was but a few feet away from the deputies at the time that they fired. In the Serrano case, again, assuming the facts are most favorable to the non-moving party here, the estate of Yanira Serrano, she was 20 feet away from Deputy True at the time that he shot her, and it wasn't an enclosed space. It was 20 feet of pavement before them outside at night. And I think that when you distinguish that case where it's a woman who was mentally ill, who was armed with an edged weapon, they did find that to be reasonable, the use of force. But when you compare that to the facts that you have before us in the estate of Yanira Serrano, it's highly distinguishable. And there one could conclude that a reasonable jury could find in favor of the estate. Furthermore, the record shows many, many, many disputed contentions. Granted, I submit that there are two triable issues of fact, but Deputy True's entire account is contradicted by five eyewitnesses, three of which are independent eyewitnesses, they're not family members, no vested interest. And I think that that would call into question Deputy True. And furthermore, and most importantly, it would call into question his perceived threat, his allegations or his contention that he felt that there was an immediate threat and that's why he shot Yanira Serrano. And as you know, Your Honors, that when there exists such contradictions in the record, it's truly up to a jury to be the ultimate decider of those facts. Because if a case is actually tried before a jury, the jury could observe Deputy True, could weigh the evidence, compare Deputy True's account against the backdrop of five different eyewitnesses. And I truly believe that if this case was allowed to go before a jury, there's many contentions of fact or disputes of facts that call into question his credibility. And ultimately, how much weight should be given to Deputy True's perceptions, beliefs, or how much weight should be given towards his perception of a threat, that's ultimately up to a jury to decide whether he was being forthcoming and truthful in his perceptions. You're down to about a minute and a half. Do you want to reserve? Sure, Your Honor. And, you know, the backdrop that we are to analyze these cases are under the backdrop of the Graham versus Connor. And there, as you know, Your Honors, the most important fact is the immediacy of the threat. And if there's disputes as to the distance that Yanira stood before the deputy and as to the manner in which she was ambulating, again, according to the sole eyewitness, a shuffling, a hobbling, just limping towards the deputy, that certainly calls into question whether there truly was an imminent threat that justified Deputy True's shooting of Yanira Serrano. Thank you, Counsel. Thank you. May it please the Court, David Levy on behalf of the appellees. This case involves questions of fact, but not genuine questions of fact. There are no significant disputed material facts. It is undisputed. And it is not just from Deputy True, but frankly, by physical evidence, objective evidence, and independent witnesses, and even the plaintiffs themselves, that this young woman chased after Deputy True. He was not running after her. She chased after him approximately 160 feet in 12 and a half seconds. And the 12 and a half seconds easily verified because of the dispatch tape, the 911 tape, from the time that her brother warned Deputy True, watch out, when she started running until the shot is fired, 12 and a half seconds. So we know whatever subjectively the family believed their daughter was or was not able to do in terms of running, she did. There's no question that she pursued him with a sharp steak knife. No question that he warned her several times, stop, stop. It's verified by independent witnesses as well. She kept coming. Finally, he told her stop, and she kept coming. She was between 15 and 20 feet away in all likelihood. It's all undisputed. And he shot her a single shot. Deputy True's state of mind, his credibility, are not really issues given the undisputed, the truly undisputed genuine facts of what occurred here. Unlike the Sheehan case cited by the appellant in which, in fact, the plaintiff in that case was in a confined room, and there were several officers outside, and there was no one else inside that room. Here, Ms. Serrano was outside. She was not confined in any way. She had a knife. There were at least three people within a short distance of her in a public space. People come and go out of the public area right there as well as the adjacent homes. It's a very different situation. Unlike cases where the only witness about what happened is a surviving police officer, and he is pursuing a witness or, excuse me, a suspect around the corner, and no one actually sees the final confrontation, just the opposite happened here. It's outdoors. Other people are in jeopardy. It was very reasonable for him to act as he did. Everything unfolded in a very quick manner, and it's a sad situation, but the district court did, in fact, find all the disputed facts in favor of the plaintiffs in ruling on motion for summary judgment did, in fact, show that the actions were reasonable. The district court never reached the issue of qualified immunity, which if the court had, I think, would also have ruled in favor of Deputy True. We've briefed that. I'd be happy to respond to any further questions or otherwise submit to the court. Any further questions? No. Okay. Thank you, Counsel. Thank you, Your Honors. Your Honors, I would just like to reiterate to Counsel's point here, stating that there are no genuine issues of fact. There are two tribal issues of fact that go, again, to the immediacy of the threat, to the imminency of the threat. The distance between the deputy and Yanira Serrano, as well as the manner in which she was ambulating. And particularly important here is that, according to Deputy True's account, he would have a jury believe, and I am quoting this from the record, that she was an Olympic runner. He literally said that she ran after him at a full sprint. She ran after him at a full speed without any limitations. That is completely contradicted by the sole eyewitness, an independent eyewitness, to that shooting. And that is Ms. Diana Ruiz, who, again, stated that she was shuffling, hobbling, and was simply limping towards him. And she demonstrated this during the deposition. Furthermore, Counsel attempts to draw a distinction between the Shion case and the Serrano case, and, sure, there are a lot of distinctions. But what he mentioned was that while Ms. Shion was contained in a room, Yanira Serrano was outside. There are no facts in the record that suggest that Deputy True was aware that there was anybody else in the vicinity aside from her family members. Well, he was to question whether there was a danger to himself. Yes, Your Honor. But in light of the fact that you have a distance of 20 feet, you have a person who is hobbling due to the physical disability, that really calls into question whether there really truly was an imminent threat. Is there any dispute over whether she was holding a knife up in the air, an 11-inch knife, as she approached him? At the moment that he approached her, there are disputed facts as to whether she had it up in the air or just down by her side. Two eyewitnesses say that she had it down by her side, whereas Deputy True says that she had it up in the air. At the time of the shooting, again, when she was at a distance of about 20 feet from him and hobbling, it's undisputed that she did have the paring knife raised up in the air. And I just want to also raise the fact that George v. Morris, that's an excellent case as it regards to a perceived threat of others. In George v. Morris, the victim's wife, the victim of the shooting, his wife, upon the police arriving, was unscathed. Her life was not in jeopardy. Here, too, are the exact same facts. The moment that Deputy True arrived, Yanira was contained in her porch, just standing on her porch. And her family members were a good 5 to 10 feet away from her, unscathed, just waiting for a deputy personnel to arrive to help them give her her medication. And then she came down off the porch and went after him? She did. And pleading to submit that that was, as a direct response, to Deputy True ambushing her. But as we all know, the provocation doctrine is no longer an argument that we can move forward. But I just want to make sure I clarify that. In our opposing papers, as well as in our opening brief, we fully analyzed the excessive force issue under Graham and then sought a supplemental argument under the provocation doctrine. But, again, that's separate. The Supreme Court has altered the landscape on that one. Exactly. But we do not rely on the provocation doctrine. I just want to make sure I clarify that as well. Further questions? Thank you for your argument. Thank both of you. And the case is to argue to be submitted for discussion.
judges: Reinhardt, Thomas, Fisher